# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| EUGENE FICARRA, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>SOURCEAMERICA, )<br>    Defendant. ) | Civil Action No. 1:19-cv-01025 |

## MEMORANDUM OPINION

Plaintiff, Eugene Ficarra, has sued his former employer for (i) retaliation, in violation of 10 U.S.C. § 2409 of the Defense Contractor Whistleblower Protection Act ("DCWPA"), and (ii) reprisal, in violation of 41 U.S.C. § 4712 of the National Defense Authorization Act ("NDAA"). The First Amended Complaint ("FAC") alleges that defendant SourceAmerica, plaintiff's employer, terminated plaintiff after he reported to his superiors that SourceAmerica was underreporting its profits on non-governmental commercial contracts. Defendant has filed a motion to dismiss the FAC for failure to state a claim. Because plaintiff's alleged disclosure does not fall within the statutorily-specified disclosures that warrant protection under § 2409 or § 4712, defendant's motion to dismiss must be granted, and plaintiff's FAC must be dismissed with prejudice.

## I.

As required by Rule 12(b)(6), Fed. R. Civ. P., plaintiff's well-pleaded allegations are assumed to be true and all facts are viewed in the light most favorable to plaintiff. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The FAC contains the following relevant factual allegations:

- Defendant, SourceAmerica, is a District of Columbia nonprofit organization that assists other nonprofit organizations that employ persons with significant disabilities in their

- efforts to obtain service contracts, primarily with the federal government but also with non-governmental commercial entities.

- Plaintiff, Eugene Ficarra, is a Virginia resident who was employed by SourceAmerica from March 2007 until October 2018.

- The United States AbilityOne Commission ("AbilityOne") is an independent federal agency that has designated SourceAmerica as one of three national nonprofit organizations (each a "Central NonProfit Agency" or "CNA") that assists nonprofit organizations to participate in the AbilityOne Program.

- The AbilityOne Program facilitates the distribution of federal government orders on the federal procurement list to qualified nonprofit organizations employing persons with significant disabilities.

- SourceAmerica works with AbilityOne to place these federal contracts with SourceAmerica's nonprofit business partners, entities that employ persons with significant disabilities.

- When AbilityOne selects one of SourceAmerica's business partners for a federal government contract, there is a fee of approximately 4% of the overall contract price paid to SourceAmerica. The nonprofit organization performing the contract (SourceAmerica's business partner) pays this fee to SourceAmerica out of the total contract proceeds.

- SourceAmerica's annual operating budget of approximately $95 million is funded primarily from the approximate 4% fee on the $2.2 billion in contracts on the federal procurement list for which SourceAmerica is the CNA.

- By virtue of the AbilityOne Program and the fees associated with each contract awarded from the federal procurement list, much of what SourceAmerica does is ultimately funded at least in part by the federal government.

- For SourceAmerica to qualify as a CNA, SourceAmerica must demonstrate its financial stability to AbilityOne and the contracting federal agency. To demonstrate its financial stability, SourceAmerica provides its profit and loss statement, balance sheet, and overall financial information to AbilityOne on a regular basis.

- SourceAmerica is the prime CNA service vendor for (i) the Ft. Knox Total Facilities Management Contract, (ii) the GSA/FSS contracts, and (iii) the Natick M&D contract. SourceAmerica receives payment for these services directly from the federal government.

- The FAC includes a table of 10 contracts which are Department of Defense "recycling contracts on which SourceAmerica is the CNA." FAC at ¶ 17. Each row in the table lists, under the title "Non-Profit Name," a non-profit that is neither SourceAmerica nor CyclePoint (apparently a business segment within SourceAmerica) as the non-profit associated with each contract.

- The FAC also alleges that SourceAmerica is the CNA for 30 contracts with various entities within the Air Force. Each of these 30 contracts is listed in a chart, and again that chart lists a non-profit that is neither SourceAmerica nor CyclePoint as the non-profit associated with each contract. *See id.* at ¶ 18.

- Plaintiff was employed by SourceAmerica from March 2007 until his termination on or about October 29, 2018. His most recent position was as Assistant Vice President, Commercial Sales & Operations.

- In or around September 2015, SourceAmerica assistant Vice President Paul Donohue recruited plaintiff to make a lateral move to SourceAmerica's Commercial Sales section to build a commercial sales team. By January 2016, the commercial sales team had been established and was winning bids for non-governmental commercial contracts for CyclePoint, SourceAmerica's new business segment focused on electronics recycling.

- CyclePoint had non-governmental contracts with commercial clients and government contracts with the United States Department of Homeland Security. CyclePoint received revenue from federal government contracts, but that revenue was received under separate account codes from the non-governmental contracts.

- From March 2016 through September 2017, plaintiff questioned various executives at SourceAmerica concerning whether the profit from SourceAmerica's/CyclePoint's non-governmental commercial contracts was being accurately reported. According to the FAC, plaintiff allegedly informed his superiors that SourceAmerica was underreporting the profits it earned on CyclePoint's non-governmental commercial contracts.

- In or around May 2017, plaintiff filed a complaint with Vuslat Eksi, the director of SourceAmerica's ethics & compliance department, alleging that senior executives at SourceAmerica were underreporting the profits SourceAmerica earned on CyclePoint's non-governmental commercial contracts.

- In or around May 2017, at the suggestion of Chief Legal Officer Meghan Garber, plaintiff met with attorneys appointed by SourceAmerica's Board of Directors regarding plaintiff's allegations that SourceAmerica was underreporting its non-governmental commercial contract profit. Plaintiff was promised anonymity.

- In 2017, the Commercial Sales team exceeded SourceAmerica's 2017 Corporate Goals. Nevertheless, plaintiff received his performance review in December 2017 and was rated only as "Successful." Plaintiff submitted an appeal to change his rating to "Exceeds Expectations," but his appeal was denied.

- On or about February 15, 2018, plaintiff met with Eksi and complained of retaliation by CFO Elizabeth Goodman. According to the FAC, Eksi acknowledged during that meeting that plaintiff's complaints of retaliation and bullying by Senior Leadership members, specifically CFO Elizabeth Goodman and CEO Steve Soroka, were valid complaints.

- On or about October 29, 2018, SourceAmerica eliminated plaintiff's position and terminated him, as no other position was created to move or to retain plaintiff. Plaintiff's 2015 performance review was "Exceeds Expectations," and his 2016 performance review was "Outstanding."

## II.

The well-settled motion to dismiss standard applicable here does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, in making this determination the district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But the district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, the complaint must allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought. Accordingly, the motion to dismiss must be granted if the complaint does not allege a sufficient factual basis to create a plausible inference that plaintiff is entitled to relief.

### III.

The FAC alleges two retaliation-based claims, namely (i) retaliation, in violation of 10 U.S.C. § 2409 (the "DCWPA Claim"), and (ii) reprisal, in violation 41 U.S.C. § 4712 (the "NDAA Claim"). These statutes—the DCWPA, 10 U.S.C. § 2409, and the NDAA, 41 U.S.C. § 4712—are essentially quite similar in certain respects. Both statutes aim to protect employees of federal contractors from retaliation by their employers when those employees have made disclosures of certain statutorily-defined information. The principal difference between the two statutes is the range of government contracts covered: § 2409 applies only with respect to Department of Defense ("DoD") or National Aeronautics and Space Administration ("NASA") contracts, whereas § 4712 applies with respect to all federal contracts.

Here, the parties' dispute focuses sharply on whether plaintiff's disclosure as alleged in the

4

FAC—namely that SourceAmerica was underreporting CyclePoint's non-governmental commercial contract profit and that SourceAmerica was including that underreported profit in its consolidated financial statements—is a disclosure covered by either statute. For the reasons that follow, plaintiff's alleged disclosure is not covered by either statute.

To begin with, plaintiff does not contend, nor could he plausibly do so, that he reasonably believed his disclosure of SourceAmerica's alleged underreporting of profits on CyclePoint's non-governmental commercial contracts was, as required by 10 U.S.C. § 2409, evidence of:

> Gross mismanagement of a Department of Defense [or NASA] contract or grant, a gross waste of Department [or NASA] funds, an abuse of authority relating to a Department [or NASA] contract or grant, or…[a] substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a)(1). Similarly, plaintiff does not allege, and cannot plausibly allege, that he reasonably believed his disclosure was, as required by 41 U.S.C. § 4712, evidence of:

> [G]ross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, [or] a substantial and specific danger to public health or safety.

41 U.S.C. § 4712(a)(1).

Apparently aware that his disclosure does not meet those clear statutory requirements for protected disclosures, plaintiff focuses instead on the following statutory language, arguing that he reasonably believed that his disclosure was evidence of "a violation of law, rule, or regulation related to a Department [of Defense or NASA] contract" and evidence of "a violation of law, rule or regulation related to a Federal contract." 10 U.S.C. § 2409(a)(1); 41 U.S.C. § 4712(a)(1). But plaintiff's disclosure also clearly does not fit within this statutory language; even assuming plaintiff's disclosure concerns "a violation of law, rule, or regulation," his disclosure is not "related to" a DoD, NASA, or other federal contract, nor could plaintiff have reasonably believed that it was.

5

Clearly, plaintiff's disclosure was related only to non-governmental commercial contracts. Specifically, plaintiff allegedly reported to his superiors that SourceAmerica was underreporting profit from CyclePoint's non-governmental commercial contracts. The only tenuous connection between plaintiff's disclosure and the federal government is that the FAC alleges that SourceAmerica's consolidated financial statements included the underreported profit from CyclePoint's non-governmental commercial contracts and that those consolidated financial statements were submitted to AbilityOne as part of AbilityOne's evaluation of SourceAmerica's financial stability. This tenuous connection is far too attenuated to meet the "related to" statutory requirement of either § 2409 or § 4712. To conclude otherwise would sweep within the ambit of both statutes virtually every manufacturer or other organization that sells products both to the federal government and to private entities, even though the alleged underreporting of profit does not have any connection to any federal contract. That interpretation stretches § 2409 and § 4712 far beyond the plain language of those statutes and thus far beyond what the drafters of those statutes could have reasonably intended.[1]

Whether plaintiff's alleged disclosure is covered under § 2409 or § 4712 turns on the meaning of the phrase "related to" as used in both § 2409 and § 4712. It is axiomatic that statutory construction starts with analyzing the statute's plain language. *See, e.g., Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). The Supreme Court has made clear that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (quoting *Burns v. Alcala*, 420 U.S. 575, 580–81 (1975)). The plain meaning of "related to" is an association or connection between two or more

---

[1] Neither party has cited a case, nor has any case been found, that analyzes whether a disclosure that an employer has understated profits on a non-governmental commercial contract fits within the statutory language of §§ 2409 or 4712. Nor has any case been cited or found that addresses an analogous disclosure.

things.² There is no association or connection between a federal government contract and a disclosure involving the profits earned from a non-governmental commercial contract. Thus, the "related to" language in both § 2409 and § 4712 requires an actual nexus between a plaintiff's disclosure and a DoD, NASA, or federal contract; no such nexus exists here.

This conclusion is further supported by the well-settled principle that statutes must be construed as a whole.³ And the other types of disclosures explicitly protected within the same provision of § 4712⁴—gross mismanagement of a federal contract and a gross waste of federal funds—underscore the importance of a significant connection between the protected disclosure and a federal contract. Because the other protected disclosures in § 4712 must explicitly involve federal contracts, it follows that the "related to" language in § 4712 and § 2409 requires that there be an actual nexus between the employee's disclosure and a federal contract for the disclosure to be protected under the statutes.⁵ No such nexus exists here.

Quite apart from the fact that SourceAmerica's non-governmental commercial contracts

---

² *See, e.g.*, *Relate To*, MerriamWebster.com, https://www.merriam-webster.com/dictionary/relate%20to (last visited March 27, 2020) ("to be connected with (someone or something); to be about (someone or something)"); *Relate*, Oxford-English Dictionary, https://www.oed.com/view/Entry/161807?rskey=c0I8v3&result=1#eid (last visited March 27, 2020) ("to connect, to link; to establish a relation between"); *Relate*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=relate (last visited March 27, 2020) ("to establish or demonstrate a connection between").

³ *See, e.g., Graham Cnty. Soil and Water Conserva. Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995)) ("Courts have a 'duty to construe statutes, not isolated provisions.'").

⁴ As noted, § 2409 contains the same protected disclosure categories as § 4712 but its application is limited only to DoD and NASA contracts. Thus, it follows *a fortiori* that the conclusions reached here regarding § 4712 also apply to § 2409.

⁵ In addition, the legislative history of § 4712 supports this interpretation of the statutory language and makes clear the importance of a sufficient nexus between a plaintiff's disclosure and a federal contract. As the Senate Committee on Homeland Security and Governmental Affairs explained, "[a] private individual blowing the whistle on conduct occurring in relation to a private company…must seek the protection of other laws that apply to private citizens." *To Enhance Whistleblower Protector for Contractor and Grantee Employees*, S. Rep. No. 114-270, at 12 (June 7, 2016).

are not "related to" any federal contract, the FAC also fails to allege, as required by §§ 2409 and 4712, the "law, rule, or regulation" that plaintiff reasonably believed SourceAmerica violated. In this respect, plaintiff's supplemental brief cites the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), the False Statements Act, 18 U.S.C. § 1001, and a provision of the Federal Acquisition Regulation ("FAR"), 48 C.F.R. 15.406-2. But plaintiff's citation to these federal statutes and regulations misses the mark. The conduct that the FAC alleges plaintiff reported to his superiors does not constitute a violation of any of the federal statutes or regulations identified by plaintiff, and no reasonable person could conclude otherwise. Both the False Claims Act and the False Statements Act contain a materiality requirement that is not met here,[6] and the FAR regulation plaintiff cited has absolutely no relevance to the facts alleged in the FAC.[7]

In sum, plaintiff has attempted to re-write § 2409 and § 4712 to cover his disclosure that

---

[6] *See Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) (holding that the False Claims Act materiality requirement is "demanding" because "the False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden variety breaches of contract or regulatory violations"); *United States v. Gaudin*, 515 U.S. 506, 509 (1995) ("It is uncontested that conviction under [18 U.S.C. § 1001] requires that the statements be 'material' to the Government inquiry…The statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'") (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)).

Here, no facts support any plausible inference that the information plaintiff reported to his superiors—namely that SourceAmerica was underreporting CyclePoint non-governmental commercial contract profit—was material to AbilityOne's determination that SourceAmerica was sufficiently financially stable to qualify as a CNA. AbilityOne determined that SourceAmerica met the financial stability requirement to remain a CNA despite SourceAmerica allegedly underreporting its profit. Even assuming that plaintiff's allegation of underreporting profit is true, it means that SourceAmerica's financial status was actually *better* than the financial status reported to AbilityOne. Accordingly, plaintiff's alleged disclosure of SourceAmerica's underreporting of its non-governmental commercial contract profit could not have been material to AbilityOne's evaluation of SourceAmerica's financial stability. No reasonable person could conclude otherwise.

In addition, it is worth noting that the False Claims Act provides a specific process through which a private person may file a False Claims Act action *in camera*. *See* 31 U.S.C. § 3730(b)(1)-(2). Plaintiff never filed a False Claims Act action in relation to the activity he allegedly reported to his superiors, namely that SourceAmerica was underreporting its non-governmental commercial contract profit.

[7] Specifically, 48 C.F.R. 15.406-2 requires contractors to turn over proprietary cost or pricing data when the cost of federal government procurement exceeds $750,000 for a good or service that is provided by only one source. *See* 48 C.F.R. 15.406-2, 15.403-4, 15.403-5. The FAC does not allege that this is the type of work at issue here.

8

SourceAmerica allegedly underreported its profits from CyclePoint's non-governmental commercial contracts. But that attempt has failed. The FAC does not plausibly allege, as required by § 2409 and § 4712, that plaintiff's disclosure "related to" a DoD, NASA, or federal contract, nor does it plausibly allege that plaintiff reasonably believed his disclosure was evidence of SourceAmerica's "violation of a law, rule, or regulation." Simply put, plaintiff's disclosure does not trigger the protections of § 2409 or § 4712. Accordingly, defendant's motion to dismiss must be granted, and the FAC must be dismissed for failure to state a claim.

## IV.

Plaintiff's claims have now twice been dismissed on defendant's motion. Moreover, the December 6, 2019 Order provided plaintiff an additional opportunity to identify the law, rule, or regulation related to a federal contract that plaintiff reasonably believed SourceAmerica's financial misrepresentations violated through the submission of a supplemental brief. As noted above, plaintiff's supplemental brief failed to identify a reasonable belief in any violation of a law, rule, or regulation. Given that plaintiff has attempted to state retaliation claims pursuant to § 2409 and § 4712 twice and that plaintiff was provided a third opportunity to provide evidence of the required elements to state these claims via supplemental briefing, it is clear that further attempts at amendment would be futile. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("[A] district court may deny leave if amending would be futile[.]"); *U.S. ex rel. Godfrey v. Kellogg, Brown & Root, Inc.*, No. 05-cv-1418, 2008 WL 9878351, at *9 (E.D. Va. Mar. 13, 2008) ("Plaintiff has had three opportunities to plead his case and further amendment would be futile."). Accordingly, the FAC must be dismissed with prejudice.[8]

---

[8] Nothing in this Memorandum Opinion addresses or expresses any view as to whether plaintiff may have a cause of action against SourceAmerica for his termination under some other statute.

9

* * *

For the reasons set forth above, defendant's motion dismiss will be granted and plaintiff's FAC will be dismissed with prejudice.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, VA
April 1, 2020

/s/
T. S. Ellis, III
United States District Judge